# Henry Bortfeld, Appellee, v. James M. Rippetoe, Appellant.

## Gen. No. 6,922.

1. Malicious prosecution—*lack of justification for arrest of boarder under Innkeepers' Act.* Evidence reviewed in an action for malicious prosecution by a boarder at a hotel against the hotel keeper, where, prior to plaintiff's arrest under the Innkeepers' Act, defendant knew that plaintiff had no ready money, and where there had been a dispute as to the rate to be paid and plaintiff had offered to pay what he deemed just, and *held* that at no time when plaintiff obtained either meals or lodging from defendant did he have any intention to defraud defendant, and that there was no justification for plaintiff's arrest for a violation of section 1 of said Innkeepers' Act (Cahill's Ill. St. ch. 38; ¶ 358), making it a misdemeanor for any person to obtain food or lodging at any hotel, etc., with intent to defraud.

2. Malicious prosecution—*want of probable cause when Innkeepers' Act used to collect civil debt.* A prosecution instituted by a hotel keeper under the Innkeepers' Act against a boarder who had offered to pay what was just was without probable cause and constituted malice, where the advice of counsel was sought and obtained for the purpose of forcing the collection of an ordinary civil debt, and where the proceedings before the justice were dismissed at the instance of the hotel keeper upon the refusal of the State's Attorney, who had never been notified of the hearing, to attend.

3. Malicious prosecution—*advice of counsel insufficient to justify arrest of boarder for nonpayment of debt.* Advice of counsel was no defense in an action for malicious prosecution where plaintiff, who had been a boarder at defendant's hotel, had been arrested for violation of the Innkeepers' Act, it appearing that defendant's own report of his conversation over the telephone with his attorney revealed the fact that he was chiefly interested in the collection of the full amount of his bill, and that the advice he got was to give plaintiff a chance to pay and if he did not pay to have him arrested.

Appeal from the Circuit Court of Mercer county; the Hon. William T. Church, Judge, presiding. Heard in this court at the April term, 1921. Affirmed. Opinion filed November 2, 1921.

Oscar E. Carlstrom, for appellant.

James A. Allen and Virgil H. Duvall, for appellee.

Mr. Justice Jones delivered the opinion of the court.

The appellee, Bortfeld, recovered a judgment in the court below against the appellant for $300 and costs upon a declaration charging the appellant with malicious prosecution. The jury returned a verdict assessing appellee's damages at $500, a remittitur of $200 was entered by appellee and thereupon the trial court overruled a motion for a new trial and entered judgment in favor of appellee as aforesaid.

Bortfeld was a traveling man and was engaged in the business of selling oil stock. He came to Keithsburg, Illinois, in connection with his business and registered at the Commercial Hotel, which was owned and operated by Rippetoe, the appellant. He stayed at the hotel over night and for breakfast. He settled his bill and departed. He again returned after a few days and stayed about a day. He settled his bill on this occasion. On July 14, 1919, he again returned to Keithsburg and registered at the Commercial Hotel and was assigned to the same room he had occupied the last time he was there. He stayed eleven weeks or until October 1, 1919. At the time he last registered at the hotel nothing was said by either party concerning rates or charges.

The evidence discloses that the hotel was patronized by both transient and regular boarders. The term "transient boarders" was used to include all boarders who were not regular boarders. A different rate was charged the different classes of boarders. The transient boarders were charged at the rate of 60 cents for each meal and 60 cents for lodging. The regular boarders were charged at the rate of $1.00 a day for board, including both meals and lodging. According to the testimony of Rippetoe the front rooms of the hotel were reserved for the transient boarders

and the rear rooms were reserved for the regular boarders. The room occupied by Bortfeld was not immediately in front but was adjacent to the front rooms and was not among those classed as back rooms. Ordinarily regular boarders did not eat at the same table with the transient boarders. Somewhat different and better service was given the transient boarders. They were served fresh fruits in season for breakfast while the regular boarders were not so served. There does not appear to have been any other material difference in the service given the two classes of boarders. Bortfeld ate at the same transient table as also did a regular boarder by the name of McSweeney.

On the first two occasions when Bortfeld was a patron of the hotel he was charged and paid the transient rates. After his return on July 14, 1919, he stayed at the hotel continuously but made no settlement of his account. On various occasions he told the proprietor Rippetoe that as soon as he was able to close a deal he would settle for his board. On September 30, he spoke to Rippetoe and told him he would like to have him figure up his bill as he had received some money and was ready to settle. Rippetoe figured up the bill at the rate of $2.40 a day. The amount thus computed was something over $199. Bortfeld protested against the charge of $2.40 a day and claimed that the bill should be figured at the regular boarder's rate. On the next day, October 1, the subject of settlement was again taken up between the parties but no agreement was reached. Bortfeld persisted in his claim that he was a regular boarder and was entitled to a rate of $1.00 a day. Rippetoe was equally persistent in his claim that Bortfeld was a transient boarder and that he was accepted as such when he registered and that he must pay the transient rate of $2.40 a day. Bortfeld then made a tender of $77 or $78 in full payment of his board but this tender was

refused by Rippetoe. There was a spirited argument between the men and Bortfeld announced his intention to leave the hotel and go to the Arlington Hotel which is located about a block away. Rippetoe told him that he must not move his baggage, which consisted of several valises or grips, some shoes and other personal effects. Bortfeld left these things at the hotel and went to the Arlington as a patron of that hotel. He and Rippetoe had one or two more conversations after that in reference to the board bill and each declined to recede from his position in reference to the amount which should have been charged for the board in question. On October 7, they again discussed the matter. Bortfeld offered to pay at the regular boarders' rate and again declined to pay his account at the transient rate. On this day Rippetoe called over the telephone his attorney, Mr. Nolan of Oquawka, and told him that Bortfeld had been a boarder at his hotel for about eleven weeks and that he refused to pay the transient rate; that his bill amounted to $193 at such rate; that Bortfeld refused to pay more than $77 or $78 and that he, Rippetoe, feared that Bortfeld was going to leave town. Mr. Nolan thereupon advised Rippetoe to give Bortfeld another chance and if he did not pay to have him arrested for violation of the act providing a penalty for defrauding an innkeeper. Afterwards on the same day Rippetoe went before a justice of the peace and filed a complaint against Bortfeld charging him with a violation of such act whereupon a warrant was issued and placed in the hands of a constable. Bortfeld at this time was employed by the Mississippi Sand and Gravel Company of Keithsburg and was a boarder at the Arlington Hotel. The warrant was served on him by the constable and he was placed under arrest. He gave a bond and was released. The case was set for hearing before the justice on the next day and then by agreement it was continued to October 9. On this last-

mentioned day Bortfeld appeared in person and by his attorneys. Rippetoe also appeared in person and by the attorney Nolan whom he had consulted in reference to the matter. On this occasion Nolan told his client that it was a State case and that it would be necessary for the State's Attorney to be present. He inquired if the State's Attorney had been notified and was informed that no notice had been given him. After some conversation the justice of the peace went to the telephone and called the State's Attorney who lived at Aledo. Just what was said is not very clear from the evidence but the conversation over the telephone resulted in a refusal of the State's Attorney to attend the trial. The justice of the peace returned to his office after this conversation with the State's Attorney and reported it to Rippetoe and his attorney whereupon the action against Bortfeld was dismissed. It was never again instituted and no criminal proceedings against Bortfeld on account of his failure to pay the board bill are now pending. However, Rippetoe has instituted a civil suit for the amount claimed by him to be due from Bortfeld. At the time the proceedings before the justice of the peace were dismissed, Bortfeld again made a tender of $78 to Rippetoe and the latter again refused to accept it.

Bortfeld remained in Keithsburg for a short time thereafter and according to his testimony he was compelled to leave there because of the notoriety he had received through the criminal proceedings which had been brought against him by Rippetoe.

It is insisted by appellant that the judgment ought to be reversed because he was justified through the conduct of Bortfeld in having the latter arrested, on account of his violation of an "Act to define and punish frauds upon hotel, inn, boarding and eating-house keepers" (Cahill's Ill. St. ch. 38, ¶ 358 et seq.); that he had probable cause for believing that the conduct of Bortfeld in refusing to pay the amount due on

the board bill as claimed by appellant constituted a violation of said act, and, further, because he, Rippetoe, in good faith acted upon the advice of reputable counsel after making a full disclosure of all the facts to said attorney.

Section 1 of the Innkeepers' Act ('Cahill's Ill. St. ch. 38, ¶ 358) above referred to provides: ''That any person who shall obtain food, lodging or other accommodation at any hotel, inn, boarding or eating-house with intent to defraud the owner or keeper thereof, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding $100 or imprisonment in the county jail not exceeding thirty days.'' Section 2 of the Act (Cahill's Ill. St. ch. 38, ¶ 359) provides what shall constitute prima facie proof of the fraudulent intent mentioned in section 1 of the Act and it also provides that the Act shall not apply to regular boarders, nor when there has been an agreement for a delay in payment.

We are led to believe, from an examination of the evidence in this case, that at no time when Bortfeld obtained either meals or lodging from appellant he had any intention to defraud appellant. It is shown that during the time he was a guest of the hotel he did not represent himself to be possessed of ready money but frankly told the innkeeper that he was waiting to close a deal in order to get money with which he could pay. When he received money he went to the innkeeper and offered to make settlement. A dispute arose between them as to whether Bortfeld should be charged as a transient or a regular boarder. The contentions of Bortfeld seem to have been made in good faith. We are of the view that the statute above referred to has no application to such a case. It was intended to apply to those who are not regular boarders and who fraudulently intend to beat and cheat innkeepers out of money which is properly and justly due for board. The legislature certainly never in-

tended to penalize any person who in good faith declined to pay the demand of an innkeeper on the ground that the amount claimed was either incorrect or was exorbitant, unreasonable and unjust. It makes no difference in this case whether Bortfeld was a transient boarder or a regular boarder. If his refusal to pay was in good faith and based on reasonable ground then he was not amenable to the penalties of the law.

The circumstances of the case as they are shown by the evidence lead us to the further belief that Rippetoe did not in good faith believe that Bortfeld fraudulently intended to beat him out of a portion of the board bill. After Bortfeld refused to pay at transient rates, Rippetoe let the matter run along for more than a week discussing it at frequent intervals with Bortfeld, making no effort to have him arrested, knowing that Bortfeld was in Keithsburg all of the time boarding at a hotel within a block's distance. And not until October 7, did Rippetoe call for the advice of an attorney. His own report of his conversation over the telephone with the attorney reveals the fact that he was chiefly interested in the collection of the full amount of the board bill as claimed by him. The advice that he got was to give Bortfeld "a chance to pay and if he did not pay to have him arrested." It seems to us that the arrest which followed was but an effort to coerce the payment of the bill according to the terms of Rippetoe. When the case was set for hearing before the justice of the peace, Rippetoe and his private counsel were present. The State's Attorney had never been notified of the hearing and when called and told about the trial he refused to attend. The proceedings were then dismissed at the instance of Rippetoe and a civil suit filed for the amount of his demand. This prosecution seems to have been without probable cause and the advice of counsel was sought and obtained for the purpose of forcing the

collection of an ordinary civil debt. Such action constitutes malice under the law. The prosecution was not instituted in good faith for the purpose of prosecuting a crime and in the interest of public justice but was intended to compel the collection of money claimed to be due. Under such circumstances the advice of counsel cannot be interposed as a defense. In *Neufeld v. Rodeminski,* 144 Ill. 83, it is said that, notwithstanding the advice of counsel, if the prosecution was instituted for the mere purpose of forcing the collection of an ordinary debt, without probable cause to believe that crime had been committed, the defendants could not shield themselves behind the advice of counsel; that the evil quality of the heart which prompts a man to make a false charge against another for the purpose of private gain or advantage is legal malice. In the case at bar there was no sufficient evidence to justify the appellant in believing that the appellee was about to violate the Innkeepers' Act and depart without paying for board.

Complaint is made of the first, second, eighth, ninth, tenth and thirteenth instructions given on behalf of appellee and also of the refusal of the second, fourth, fifth, sixth and seventh instructions requested on behalf of the appellant. A great many more instructions were tendered in this case than were justified. Numerous instructions were offered which contained the same propositions of law, stated in slightly different language. About seventeen instructions were given by the trial court on behalf of the appellee. Eight instructions were given on behalf of the appellant and seven instructions were refused. Upon examination of all of these instructions we are of the opinion that the jury were not misled by any instruction but were fully and fairly instructed as to the law upon all questions properly before them. No good purpose can be served by taking up each instruction in detail and con-

sidering it here. For the reasons above stated the judgment is affirmed.

*Affirmed.*