## Arnot L. Ellsworth, Appellee, v. The Peoples Life Insurance Company, Appellant.

## Gen. No. 7,803.

1. MALICIOUS PROSECUTION—*liability of corporation.* A corporation is not liable for a malicious prosecution instituted without its authority or ratification.

2. CORPORATIONS—*ratification of tort of agent.* A corporation, although not originally responsible for the tort of its agent, may pursue a course of conduct which will amount to a ratification.

3. MALICIOUS PROSECUTION—*advice of counsel as defense.* If, notwithstanding the advice of counsel, a criminal prosecution is instituted for the purpose of forcing the collection of a debt without probable cause appearing that a crime has been committed, the party so prosecuting cannot shield himself behind the advice of counsel when sued for malicious prosecution.

4. MALICIOUS PROSECUTION—*probable cause defined.* Probable cause exists where the circumstances are such as to induce a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person against whom the prosecution is brought is guilty of the crime charged.

5. MALICIOUS PROSECUTION—*want of probable cause as shown by acquittal.* Want of probable cause in a criminal prosecution is not shown alone by the acquittal of the accused.

6. MALICIOUS PROSECUTION—*authority of agent to prosecute as question for jury.* In an action of malicious prosecution against a life insurance company by a district manager who, on not turning over premiums collected, was arrested for larceny on a warrant sworn out by the State manager, whether the State manager was acting as the agent of the company and with its knowledge and consent at the time he swore out the warrant was, under the evidence, a question of fact for the jury.

7. MALICIOUS PROSECUTION—*ratification of agent's act as question for jury.* In an action of malicious prosecution against a life insurance company by a district manager who, on not turning over premiums collected, was arrested for larceny on a warrant sworn out by the State manager, whether the company ratified the action of the State manager was, under the evidence, a question for the jury.

8. MALICIOUS PROSECUTION—*probable cause as question for jury.* In an action of malicious prosecution against a life insurance company by a district manager who, on not turning over premiums collected, was arrested for larceny on a warrant sworn out by the State manager,

whether there was probable cause for such action was, under the evidence, a question of fact for the jury.

9. MALICIOUS PROSECUTION—*sufficiency of evidence of want of probable cause.* In an action of malicious prosecution against a life insurance company by a district manager who, on not turning over premiums collected, was arrested for larceny on a warrant sworn out by the State manager, evidence that the State manager, when conferring with the State's attorney, did not state all the facts, especially with reference to his permission to the district manager to apply premiums to the payment of commissions of subagents, and that a signed statement by the district manager merely admitted he had collected a certain amount of premiums, showed, with other facts, a want of probable cause and that the warrant was sworn out with malice for the purpose of collecting an alleged debt.

10. MALICIOUS PROSECUTION—*sufficiency of evidence that agent in prosecuting acted with knowledge and consent of corporation.* In an action of malicious prosecution against a life insurance company by a district manager who, on not turning over premiums collected, was arrested for larceny on a warrant sworn out by the State manager, a finding that the State manager acted with the knowledge and consent of the company is justified from evidence that the attorney for plaintiff notified the company by letter, after the preliminary examination, as to what had been done by the State manager; that the reply of the company by letter showed it was in possession of the facts and desired the law to take its course; that the State manager obtained an indictment by the grand jury, and that the company knew the warrant was to be sworn out and advised such action.

11. HARMLESS AND PREJUDICIAL ERROR—*failure to refuse instructions unduly emphasizing correct rule of law.* Where a correct rule of law as to the institution of a criminal prosecution on the advice of counsel is unduly emphasized by being stated in three instructions for the plaintiff in malicious prosecution, the failure of the court to refuse two of the instructions did not amount to reversible error, particularly where the defendant was guilty of a similar offense in its instructions.

Appeal by defendant from the Circuit Court of Winnebago county; the Hon. ARTHUR E. FISHER, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed October 25, 1927. Rehearing denied February 6, 1928.

STEDMAN, KESLER & DINGLE, for appellant; J. E. GOEMBEL and FRANK H. HALL, of counsel.

GUS S. BROWN and KNIGHT & SWENSON, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

Appellee, Arnot L. Ellsworth, began suit for malicious prosecution and false imprisonment in the circuit court of Winnebago county against Walter A. Milder and The Peoples Life Insurance Company. The suit was dismissed as to Milder. There was a trial by jury, verdict and judgment against appellant, The Peoples Life Insurance Company, for $4,000, and an appeal has been prosecuted to this court.

As grounds for reversal, it is urged that the evidence does not show that appellant was guilty of maliciously prosecuting appellee or causing him to be falsely imprisoned; that the prosecution of appellee was not instituted by authority of appellant, or ratified by it, and that the evidence was sufficient to show probable cause for the prosecution.

The evidence shows that appellee had a wife and three children. For several years he had been in the insurance business. He was assistant superintendent for the Western and Southern Insurance Company with offices in Rockford, Illinois, with 21 employees under him. His salary of $50 per week and commissions amounted to almost $4,000 a year. Milder was the State manager for the appellant company. In January, 1925, he began negotiations with appellee, Ellsworth, to enter the employ of appellant as district manager. During these negotiations Ellsworth and Milder went to Chicago and had a conference with E. J. Cotter, an assistant secretary of the company.

Appellee testified that in that conversation Cotter said that Milder had charge of the territory and anything he said or did was all right with the company. He also testified that Milder said he would pay $1,000 to open an office, together with certain office expenses including salary of a stenographer or bookkeeper, with advances for five men as solicitors or agents. On February 16, 1925, a written contract was entered into

between appellant and appellee, by the terms of which appellee was appointed to canvass for insurance personally and through agents. All collections were to be forthwith paid over to the appellant, and appellee was to securely hold all money belonging to appellant in trust, separate and distinct, and in no case whatsoever to make any personal or other use of said funds. Appellee was to have a drawing account of $50 per week for six months, together with commissions.

Appellee opened an office in Rockford and employed a stenographer and three solicitors who had previously worked for him. He testified that Milder afterwards told him he might use the money collected on premiums to pay advances to his agents on business written by them, the amounts to be $85 per week and divided between three agents. Milder and three solicitors corroborated appellee in his statement. Appellant loaned appellee $350 evidenced by two notes, one for $200 and the other for $150. This money was used to pay advances to agents, and a book account was kept of the payments, all of which were made to four agents, except $70 which was paid to the stenographer. Milder claimed that the stenographer was not an agent and that appellee was not authorized to pay any part of this money to her. He also claims that appellee paid out a total of $379.18; that he collected $147.53 in premiums, which together with the $350 borrowed made a total of $497.53, leaving a balance in his hands of $118.35, for which no account had been made, and that appellee did not devote his entire time to the business of appellant as provided for by the contract.

On the evening of April 14, 1925, Milder, without the knowledge of appellee, went to appellee's office and got possession of certain books and accounts. The next morning Milder called appellee to a room in the Nelson Hotel. Three of appellee's agents were in the room. Milder told appellee he was at the end of his rope and demanded a check up on receipts and

disbursements. Milder asked each of the agents what they had received. After each had stated what he had received, a written statement was signed by appellee in which he admitted he had received the $147.53 due appellant and that no remittance had been made to appellant. Of this amount $49.18 was for premiums on policies issued on members of appellee's own family, leaving $98.35 on which appellee claimed he was entitled to commissions. Milder demanded payment of the balance due and told appellee he would give him until 10 o'clock that night to pay. He testified that he told appellee he did not wish to make it impossible for him to go into business; that he did not wish to injure him, and for this reason he would let appellee resign, which appellee did in writing. Two days later Milder sent appellee a telegram in which he stated that he did not intend to chase him for the money due, but unless prompt restitution was made he would be compelled to take such action as was necessary to make an example of him, and that unless appellee acted quickly "he would sure live to regret it." Milder testified that he called Mr. Cotter up on the 'phone and talked to him before he sent this telegram.

On July 13, 1925, Milder called at appellee's home for payment and appellee ordered him to get out. The next day Milder called on the State's attorney and told him that appellee had collected money for which he had not accounted. The State's attorney told him it was a difficult case to prosecute and that he ought to have some paper or statement. Later Milder showed the State's attorney the statement signed by appellee in which he admitted the collection of $147.53, and the State's attorney said the statement was sufficient and Milder could take out a warrant. Milder swore out a warrant charging appellee with larceny of $98.35. Appellee was arrested and confined in jail over night. A second warrant was issued charging appellee with embezzlement of $98.35. There was a preliminary

hearing before a justice of the peace on this second warrant and appellee was bound over. Milder testified before the grand jury. Appellee was later tried and acquitted, and this suit was commenced.

On the day after the preliminary hearing before the justice of the peace, appellee's attorney wrote a letter to appellant in which he told appellant of the arrest of appellee and of his having been bound over; that it seemed to the attorney that this should not have been a criminal prosecution; that there was a sharp difference between Milder and appellee as to the expenses of the office and commissions on one policy; that there was evidence corroborating appellee's contention; that in view of the dispute a great injustice had been done appellee; that there was so much feeling between appellee and Milder that there was no chance for them to get the matter settled, so the attorney was writing to appellant; that appellee felt sure that there was money due him from appellant, but that if, after an accounting, it was found that appellee owed the company he would pay it; that the writer would be glad to co-operate with appellant in an effort to have the matter fully settled, and asked for a reply. On July 23, 1925, appellant replied that it did not believe it should interfere with the trial, and that it appeared to appellant that the issues ought to be determined in court.

Two of the agents of appellee testified to two telephone conversations which Milder had with Cotter with reference to the shortage of appellee, in one of which Milder told Cotter that appellee had been arrested, and in the other Milder told Cotter that he thought the best thing to do was to get a warrant for appellee's arrest, and the witness heard Milder say: "You want me to go ahead and do whatever I think best." Milder and Cotter admit talking over the 'phone but deny that the arrest of appellee was mentioned.

In *Glenn v. Lawrence,* 280 Ill. 581, on page 585, it was said: "The facts which will sustain an action for malicious prosecution are (1) the commencement or continuance of an original, criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff." A corporation is not liable for a malicious prosecution where it is instituted without its authorty or ratification. (*Hancock v. Singer Mfg. Co.,* 174 Ill. 503.) A corporation, though not originally responsible for the tort of its agent, may pursue a course of conduct which will amount to a ratification. (*Schramko v. Boston Store of Chicago,* 243 Ill. App. 251.) If, notwithstanding, the advice of counsel, a criminal prosecution is instituted for the purpose of forcing the collection of a debt, without probable cause appearing that a crime has been committed, the party so prosecuting cannot shield himself behind the advice of counsel. (*Bortfeld v. Rippetoe,* 222 Ill. App. 504.) Probable cause exists where the circumstances are such as to induce a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person against whom the prosecution is brought is guilty of the crime charged. (*Chicago, R. I. & P. Ry. Co. v. Pierce,* 98 Ill. App. 368; *Harpham v. Whitney,* 77 Ill. 32.) Want of probable cause is not shown alone by the acquittal of the accused. (*Anderson v. Friend,* 85 Ill. 135.)

Whether Milder was acting as the agent of appellant and with its knowledge and consent at the time he swore out the warrant for appellee; whether appellant later ratified his action in that respect; and whether there was probable cause for such action, were all

questions of fact for the jury under proper instructions from the court. Milder was the State agent of appellant and was in charge of its business throughout the State. He negotiated the contract with appellee and signed it on behalf of appellant. After the contract was signed, appellee was under the jurisdiction of Milder. The contract provided that the premiums should be sent directly to appellant who was to pay the commissions. Milder took it upon himself to authorize appellee to disregard this provision and to pay commissions out of the premiums.

According to the written statement made on the day appellee resigned, he had collected $147.53; yet he had paid out $379.18, of which amount $350 was borrowed by him from appellant. It is apparent that Milder was extremely hostile to appellee. When he went to the State's attorney he did not state all of the facts, especially with reference to his permission to appellee to apply premiums to the payment of commissions. He was first told by the State's attorney that his case would be hard to prove. Milder then produced the signed statement of appellee. We do not see that this writing added much to the facts already disclosed. It simply admitted that fees of $147.53 had been collected. We are of the opinion that all of the evidence shows a want of probable cause and that the warrant was sworn out more in a spirit of malice and for the purpose of collecting an alleged debt, rather than for the purpose of punishing a violation of the law. This is apparently the view taken by the jury. This view is strengthened by the fact that immediately after the warrant was sworn out, Milder visited two newspaper offices for the purpose of seeking publicity against appellee. There is evidence tending to show that he stated he would like to stay in town and see appellee after he had been arrested, and he told one of appellee's agents to be at a certain place at a certain hour to witness that spectacle.

Even if there was no probable cause, appellant is not liable unless Milder, in swearing out the warrant, was acting for appellant, or unless appellant later ratified his acts. The letter written by the attorney for appellee, the next day after the preliminary, showed a willingness for an accounting and an agreement to pay if anything was found due. This letter was at least a notice to appellant as to what had been done by Milder. The reply of appellant shows that it was in possession of the facts and that it was acquiescing in Milder's acts and desired to let the law take its course. Afterwards Milder went before the grand jury and secured the indictment. There is evidence tending to show that appellant knew the warrant was to be sworn out and had advised such action. This evidence was sufficient to justify the jury in finding that Milder acted with the knowledge and consent of appellant.

Instructions 9, 13 and 14 given on behalf of appellee announce the rule of law as to the institution of criminal prosecution on the advice of counsel. It is not claimed that these instructions are erroneous, but it is claimed that the same rule of law is stated in each instruction and that it was unduly emphasized. There is force to this objection and the trial court could well have refused at least two of said instructions, but its failure to do so in this instance did not amount to reversible error. Our attention is called to the fact that appellant was also guilty of the same offense. Error is assigned on the sixteenth instruction given on behalf of appellee. This instruction was apparently copied from *Neufeld v. Rodeminski*, 144 Ill. 83, where it was held that it did not constitute reversible error. There was no error in the fourth instruction as modified.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*