John Neeson, Appellee, v. Lake View Dairy Company, Appellant.

Gen. No. 38,664.

McSurely, P. J., dissenting.

Opinion filed April 20, 1936.   Rehearing denied May 4, 1936.

Schein & Schein, of Chicago, for appellant; Leo D. Schein, of counsel.

Julius H. Selinger, of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

In an action on the case for malicious prosecution brought by Neeson against Siegfried Weiss and the Lake View Dairy Company and upon trial by jury, there was a verdict for plaintiff with damages assessed at $1,000. The court, overruling a motion for a new trial, entered judgment on the verdict, from which the dairy company alone prosecutes this appeal.

There was evidence tending to show that in August, 1933, Neeson, a native of Assyria and well and favor-

ably known in the Assyrian community in Chicago, applied to the dairy company for employment. He saw the president of the company, Mr. Palmer, who suggested that if the applicant would obtain customers to the number of 120 he would be employed by the dairy company to deliver milk to them. Neeson canvassed the Assyrian community and obtained the necessary number of customers. He was then given a route, which was designated No. 9, and Mr. Palmer told him he would have to see Mr. Weiss, who was a director of the corporation, the route foreman, and thereafter the secretary of the defendant dairy company. In conference with Weiss the wages of plaintiff were fixed at $30 a week. The dairy company employed a number of such drivers who were accustomed to go to the plant each morning at five o'clock with their trucks, where they received their supply of milk, which upon that day they were to distribute upon their several routes. In January, 1934, there was a farmers' milk strike resulting in a shortage. The amount of milk furnished to each route was curtailed on that account.

On January 12, 1934, Neeson was informed by the head watchman of the plant that some one had accused him of stealing some milk the day before. Neeson denied the charge and then talked with Mr. Palmer about the matter. Mr. Palmer said, "It's all right, John, forget about it." On Saturday, January 13th, when plaintiff, as was his custom, turned in his collections and received his pay for the week, he was told that Weiss wanted to see him in the office. He went to the office and was at that time discharged by Weiss for the reason, as stated by Weiss, that the company was losing money on him. However, at the same time he was informed that if he would bring in $120 the company would sell him milk and he could deliver it, but that he would be required thereafter to furnish his own truck and be responsible for any milk that was left over. Neeson refused to accede to these terms,

and on the following Monday, January 15th, obtained milk from another company and went out to serve his customers on Route 9. Weiss hired a former helper of Neeson and undertook to deliver milk to the customers usually served by Neeson. While on the route that day they met each other.

On January 17th Weiss went before a judge of the municipal court and filed an information charging that plaintiff on January 11th had stolen four cases of milk of the value of $5. Plaintiff was arrested between 11 and 12 o'clock in the nighttime at his home and taken to the police station where he was confined until the following day, when he was released on bail. Apparently, no evidence was submitted against him at the hearing, and he was discharged. In the meantime defendant seems to have appropriated the customers formerly served by plaintiff.

An extended discussion of the facts seems quite unnecessary. So far as Weiss is concerned, the evidence tends to show every element of a case of malicious prosecution as set forth in *Glenn v. Lawrence,* 280 Ill. 581, a leading case which has been consistently followed. This was the verdict of the jury, who saw and heard the witnesses testify, and also the opinion of the judge who also saw the witnesses and heard them testify and directed that judgment should be entered upon the verdict. This, too, is the opinion of this court after a careful review of all the evidence.

The controlling question in the case, and the only debatable one in our opinion, is raised by defendant's contention that Weiss acted without authority in filing the criminal information against Neeson. That the accusation was made and the criminal process obtained by Weiss in furtherance of the interests and business of defendant, rather than for any legitimate purpose of enforcing the criminal law, is hardly open to dispute, but defendant argues that this is not enough and

cites *Oberne v. O'Donnell,* 35 Ill. App. 180; *Cleveland Co-operative Stove Co. v. Koch,* 37 Ill. App. 595; *Singer Mfg. Co. v. Hancock,* 74 Ill. App. 556, affirmed in 174 Ill. 503, which hold that even though the intention of the agent is to derive for his principal a benefit by abuse of criminal process, the principal is not by that fact alone charged as a matter of law.

It is true in this case that Weiss was not, so far as the evidence discloses, expressly authorized either by the president of the corporation or its board of directors to cause the arrest of plaintiff; but even if it is conceded that the tortious act of Weiss was not in the first instance the act of the corporation, the corporation would become liable therefor by ratification. *Schramko v. Boston Store of Chicago,* 243 Ill. App. 251; *Ellsworth v. Peoples Life Ins. Co.,* 247 Ill. App. 161. The evidence shows that defendant's dairy business was carried on by Weiss and Palmer in close association with each other. There was evidence from which the jury could infer that Palmer knew of the plan to arrest Neeson prior to the issuing of the warrant. The jury was justified in drawing the inference that Palmer had knowledge that the criminal process was to be invoked, had the power to prevent it, and that if he had so willed it would have been prevented. In the last analysis, the questions of fact of whether Weiss in beginning the criminal prosecution acted in behalf of the corporation and as its agent, or the corporation thereafter approved with knowledge, were for the jury. The rule to that effect was well stated by Presiding Justice McSurely in *Schramko v. Boston Store of Chicago,* 243 Ill. App. 251, and has been followed since consistently by this court. *Ellsworth v. Peoples Life Ins. Co.,* 247 Ill. App. 161; *King v. Automobile Bonding Co.,* 283 Ill. App. 107.

The jury was justified in its inference that there had been an abuse of the criminal process for motives of

private gain and advantage. *McElroy v. Catholic Press Co.,* 254 Ill. 290.

The judgment is just and is affirmed.

*Affirmed.*

O'Connor, J., concurs.

McSurely, P. J., dissenting: In my opinion the record does not support a judgment against the corporation.