SZYMANSKI, APPELLEE, *v.* THE GREAT ATLANTIC & PACIFIC TEA CO., APPELLANT.

(No. 4170—Decided February 3, 1947.)

*Mr. Merritt W. Green* and *Mr. James D. Nestroff,* for appellee.

*Messrs. Fraser, Shumaker, Kendrick & Winn* and *Mr. Robert B. Gosline,* for appellant.

CARPENTER, J.  Plaintiff, Helen Szymanski, sued the defendant, The Great Atlantic & Pacific Tea Company, for false imprisonment and malicious prosecution. The verdict and judgment were for plaintiff in the sum of $700, and defendant appealed on questions of law.

On April 28, 1945, the plaintiff, having made some purchases in one of defendant's food stores in Toledo, was accosted, on leaving, by a store detective, Marie Robinson, and was charged with stealing a can of mushrooms and a can of pimentos.  She was taken to a lounge in the rear of the store and was questioned by Marie Robinson and the store manager.  She denied the theft and asked to be permitted to go but was detained by them and by the manager alone while Marie Robinson called city police officers.  Some time after they came, she was taken to the police station in a patrol wagon, booked and locked up.  After about an hour, she deposited $25 as an appearance bond and was released.  This happened on Saturday afternoon. The following Monday an affidavit, charging her with petit larceny, was filed by the employer of Marie Robinson, a Mr. McAllister who was doing business as the Central Bureau of Investigation, which had a contract with defendant to furnish detective service to its stores.

On the trial of the charge in the Municipal Court of Toledo, plaintiff was acquitted and discharged.

The evidence as to the alleged theft is in direct conflict.  It was plaintiff's word that she bought and paid for the merchandise against Robinson's that she saw her take and secrete the articles.  From the record it appears that both the judge of the Municipal Court

who tried the criminal charge and the jury in this action, believed the plaintiff's narrative as to what happened. This court can not say that the finding of the jury on this question was against the weight of the evidence.

The question of false imprisonment depends upon the legality of the alleged authority of Marie Robinson as a special police officer. Section 51 of the Municipal Code of Toledo provides that the director of public safety may appoint private policemen, but Section 56 of that code limits that power to the appointment of such an officer for duty in one place "unless said private policeman be the regularly detailed patrolman or officer in the actual service of a special police company incorporated under the laws of the state of Ohio." It was upon this latter provision that the validity of Marie Robinson's appointment rested.

There were two fatal defects in her authority on the date in question:

1. As shown by the record, her only authority on that day was under an appointment as a special policeman for Continental Secret Service, whose employment she left in March 1945, to work for McAllister's Central Bureau of Investigation. She was not commissioned in that service until May 8, 1945.

2. There is no evidence that either Continental Secret Service or Central Bureau of Investigation was "a special police company incorporated under the laws of the state of Ohio" as required by Section 56 of the Municipal Code of Toledo.

Only a commissioned peace officer can arrest one found committing a misdemeanor such as petit larceny. Hence, the detention of the plaintiff by Robinson was illegal and a violation of plaintiff's rights. In this, the defendant's store manager had a part and aided and abetted by detaining plaintiff in the company

lounge while Robinson went to call the police. The manager also appeared as a witness for the prosecution in the trial of the criminal charge.

Disregarding these acts of participation by the defendant's agent, the store manager, defendant urges that the arrest and the prosecution were the work of Central Bureau of Investigation, an independent contractor, and that defendant was not liable for what the bureau's agents, Robinson and McAllister, may have done.

No Ohio decisions directly in point on this type of a case are cited. Outside Ohio, the one most nearly similar cited by defendant is *Niles* v. *Marshall Field & Co.,* 218 Ill. App., 142. In that matter, the evidence did not tend in any particular to connect any agent of the store with the alleged wrongful acts of the store detective who was employed by the detective agency which had a contract with the defendant.

A case more nearly like the one at bar was later twice before that same court and each time it concluded that the question of defendant's liability was for the jury, and ultimately approved a judgment for the plaintiff. Those cases were *Schramko* v. *Boston Store of Chicago,* 243 Ill. App., 251, and *Komorowski* (plaintiff having married) v. *Boston Store of Chicago,* 263 Ill. App., 88; 341 Ill., 126, 173 N. E., 189. Those decisions were followed in *Neeson* v. *Lake View Dairy Co.,* 285 Ill. App., 36, 1 N. E. (2d), 519. To the same effect is *Dillon* v. *Sears-Roebuck Co.,* 126 Neb., 357, 368, 253 N. W., 331, and *Halliburton-Abbott Co.* v. *Hodge,* 172 Okla., 175, 44 P. (2d), 122.

The better reason on which this judgment must be affirmed on this phase is that duties of the personal character performed by a store detective like Robinson can not be assigned or delegated to an independent contractor and thereby relieve the store owner from li-

ability for illegal acts of such detective to the injury of the store's customers. That proposition was well stated in *Adams* v. *F. W. Woolworth Co.*, 144 Misc., 27, 257 N. Y. Supp., 776, a parallel case to this:

"There appear to be no direct precedents on the question of liability for a false arrest made by an independent contractor detective agency. The tendency of our law, indicated above, would, however, clearly be toward the imposition of vicarious responsibility. Customers of Woolworth Company are invited into the store to buy its merchandise, for the profit of Woolworth Company. Can it be said that Woolworth Company can disclaim all duty of protecting them from the tortious acts of detectives brought by it into its own premises for the very purpose, among others, of making arrests of its customers? This is not the case of a contractor doing his work negligently. Where negligence is the sole basis of the liability, the doctrine of *respondeat superior* has been held inapplicable to independent contracts. Negligence does not enter into the tort of false arrest. The act itself, if not justified under the statute (section 183, Code of Criminal Procedure) is tortious, irrespective of negligence. Lowenthal was brought onto the premises to watch and also to arrest. Immunity from vicarious liability would permit any storekeeper to subject his customers to the hazards of an irresponsible detective agency without peril to himself. He would obtain all the benefit of the surveillance and punishment of shoplifters; he would be subject to none of the penalties for unjustified or unlawful arrests of law-abiding citizens. The opportunities for gross injustice afforded by such a doctrine are too manifest to permit its incorporation into the jurisprudence of our state, without compelling reason."

That principle was laid down in an earlier decision,

*Clinchfield Coal Corp.* v. *Redd,* 123 Va., 420, 434, 96 S. E., 836, as follows:

"The owner of an operation or enterprise cannot, by securing through others special agents, even though they be officers of the law, for the prosecution of offenders around the plant, obtain any immunity from liability for malicious prosecutions which such owner would not be equally entitled to if he himself directly selected and paid the agents and expressly retained the power of control and removal. When he undertakes these functions, his duties are personal and non-assignable, and where he arranges for and accepts the service, he will not be permitted to say that the relationship of master and servant does not exist."

That decision was followed in *Grant Co.* v. *Owens,* 149 Va., 906, 924, 141 S. E., 860.

The conclusions of the court are:

1. That there was evidence to sustain the findings of the jury that (a) plaintiff was the victim of false imprisonment or malicious prosecution, or both, and (b) that the store manager participated in one or both torts;

2. That the contention of the defendant that because the Central Bureau of Investigation was an independent contractor, the defendant was not liable for its wrongful acts to plaintiff is invalid;

3. That error prejudicial to the defendant was not committed by the court; and

4. The judgment is affirmed.

*Judgment affirmed.*

STUART and CONN, JJ., concur.