FIFTH CLUB, INC. and David
A. West, Petitioners,

v.

Roberto RAMIREZ, Respondent.

No. 04–0550.

Supreme Court of Texas.

Argued Oct. 18, 2005.

Decided June 30, 2006.

Timothy Poteet, David E. Chamberlain, Amy Catherine Welborn, Chamberlain & McHaney, Austin, for petitioner.

Carlos Ramon Soltero, Scott Steven Cooley, Brian Scott Engel, Stephanie E. Kaiser, McGinnis Lochridge & Kilgore, L.L.P., Austin, for respondent.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice BRISTER, and Justice MEDINA joined, and in which Justice HECHT, Justice WAINWRIGHT, Justice JOHNSON, and Justice WILLETT joined as to Parts I, II, and III.

In this case we revisit the rule that an employer is generally not liable for the acts of an independent contractor unless the employer exercises sufficient control over the details of the independent contractor's work. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). We do so to consider whether a "personal character exception" makes a business owner's duties to the public non-delegable when contracting for private security services to protect its property. Because we do not recognize a personal character exception to the rule that an owner is not liable for the tortious acts of independent contractors, and because the evidence in this case is legally insufficient to support the jury's negligence, malice, and exemplary damages findings against the owner, we reverse and render judgment in the owner's favor.

We do find legally sufficient evidence to support the future mental anguish damages award against the independent contractor and affirm the judgment as to the contractor.

## I. Facts and Procedural History

Fifth Club, Inc. operates an Austin nightclub known as Club Rodeo. David West, a certified peace officer, was hired as an independent contractor by Fifth Club to provide security at the nightclub.[1] Late one night, Roberto Ramirez arrived at Club Rodeo after several hours of drinking. Ramirez and his brother tried to enter the club but were denied admission by the doorman, allegedly because they were intoxicated. The doorman, an employee of Fifth Club, signaled to West and another parking lot security officer to escort Ramirez and his brother out of the club's entrance. West allegedly grabbed Ramirez, slammed Ramirez's head against a concrete wall, knocking him unconscious, and then struck him several times. The altercation resulted in multiple injuries to Ramirez, including a fractured skull. West moved Ramirez to the parking lot and placed him in handcuffs. The police arrived and arrested Ramirez, but a grand jury later declined to indict Ramirez on the charge of assaulting a police officer. Ramirez sued West and the club for damages.

---

1. West was a campus peace officer for Huston–Tillotson College at the time of the incident. He was sworn in as a commissioned peace officer at the college the month before the incident. West had attended a law enforcement academy before becoming a commissioned peace officer.

Ramirez claims Fifth Club is vicariously liable for West's conduct in spite of his independent contractor status because it controlled West's security activities. Ramirez further claims that Fifth Club assumed a personal and nondelegable duty by contracting for security services to protect its property. Under Ramirez's theory, the personal character of this duty, of hiring security personnel to protect business invitees and the premises, allows an employer to be liable for intentional acts of its independent contractor.

A jury found Fifth Club vicariously liable for West's conduct and for negligence and malice in its hiring of West. The jury awarded Ramirez actual damages that included future mental anguish damages and exemplary damages. The court of appeals affirmed.[2] 144 S.W.3d 574, 592 (Tex. App.—Austin 2004, pet. granted).

Fifth Club contends there is legally insufficient evidence it retained sufficient control over West's security activities to make it vicariously liable for his conduct. It also argues there is no personal character exception to the rule that insulates employers from the tortious acts of independent contractors. Fifth Club further asserts there is legally insufficient evidence to support the finding of malice in its hiring of West. And finally, both Fifth Club and West claim there is legally insufficient evidence to support the award of future mental anguish damages. We address each argument in turn.

## II. Fifth Club's Liability for West's Conduct

### A. Control

Generally, an employer has no duty to ensure that an independent contractor performs its work in a safe manner. *See Lee Lewis Constr., Inc.,* 70 S.W.3d at 783. However, an employer can be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the damage. *See id.* In *Redinger v. Living, Inc.,* we explained that

> [o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

689 S.W.2d 415, 418 (Tex.1985) (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1977)). We held the general contractor liable for the actions of the independent contractor in *Redinger* because the general contractor retained "the power to direct the order in which the work was to be done and to forbid the work being done in a dangerous manner." *Id.; see Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 226 (Tex.1999) ("The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner."). We further explained in *Koch Refining Co. v. Chapa* that a right of control requires more than

> a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make sug-

---

2. Other members of Ramirez's family were parties to the trial court and court of appeals proceedings regarding Fifth Club's and another officer's actions at the time of the incident, but those plaintiffs have not appealed to this Court. Also, although raised below, we do not address the issue of West's official immunity as West and Fifth Club did not raise the issue in this Court.

gestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

11 S.W.3d 153, 155 (Tex.1999) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)). Employers can direct when and where an independent contractor does the work and can request information and reports about the work, but an employer may become liable for the independent contractor's tortious acts only if the employer controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses. *Id.* at 155–56.

█ In this case, there was no evidence that Fifth Club gave more than general directions to West or that it retained the right to control the manner in which West performed his job. Fifth Club's action in directing West to remove Ramirez from the premises did not rise to the level of directing how the work was to be performed or directing the safety of the performance because West retained the right to remove Ramirez by whatever method he chose. Fifth Club, therefore, cannot be held vicariously liable for West's conduct.

#### B. Personal Character Exception

Ramirez argues that even if Fifth Club did not retain control over West's actions, it can still be held vicariously liable because of a personal character exception to the general rule against liability of employers for the acts of independent contractors. According to Ramirez, the duty arising from an employer's hiring of security personnel is personal in character, special only because of the nature of security work, and therefore an employer should be held liable for the tortious acts of the independent-contractor security personnel.

We have never addressed this "personal character exception," which first appeared in Texas in 1976. *See Dupree v. Piggly Wiggly Shop. Rite Foods, Inc.*, 542 S.W.2d 882, 888–90 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Since then, the exception has been mentioned in only three other opinions from Texas courts of appeals. *See Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 787–88 (Tex. App.—El Paso 1996, writ denied); *Ross v. Tex. One P'ship,* 796 S.W.2d 206, 213 (Tex. App.—Dallas 1990), *writ denied,* 806 S.W.2d 222 (Tex.1991); *Westhill Mgmt., Inc. v. Hefner,* No. 01–87–000617–CV, 1988 WL 46399, at *3 (Tex.App.—Houston [1st Dist.] May 12, 1988, writ denied)(not designated for publication). Under the exception, a premises owner can be held liable when an independent contractor's work involves duties that are personal in character. *See Duran,* 921 S.W.2d at 789; *Ross,* 796 S.W.2d at 212–13. Texas courts have discussed the exception only in regards to security work performed by an independent contractor. *See Duran,* 921 S.W.2d at 787–88; *Ross,* 796 S.W.2d at 213; *Westhill Mgmt., Inc.,* 1988 WL 46399, at *3.

In *Dupree,* the Thirteenth Court of Appeals held that a supermarket could be vicariously liable for the work of its independent-contractor security guards:

[B]ecause of the "personal character" of duties owed to the public by one adopting measures to protect his property, owners and operators of enterprises cannot, by securing special personnel through an independent contractor for the purposes of protecting property, obtain immunity from liability for at least

the intentional torts of the protecting agency or its employees.

542 S.W.2d at 888. The court cited opinions from other states in support of its holding. *Id.* (citing *Adams v. F.W. Woolworth Co.*, 144 Misc. 27, 257 N.Y.S. 776, 781 (N.Y.Sup.Ct.1932); *Hendricks v. Leslie Fay, Inc.*, 273 N.C. 59, 159 S.E.2d 362, 366–68 (1968); *Szymanski v. Great Atl. & Pac. Tea Co.*, 79 Ohio App. 407, 74 N.E.2d 205, 206–07 (1947)). The court further held that when a store takes on security functions, the store cannot assign its duty to protect the public to the independent-contractor security personnel. *Id.* at 890.

The Eighth Court of Appeals cited *Dupree* when it reversed a summary judgment on the basis that a fact issue existed concerning application of the personal character exception to a similar situation involving the alleged intentional torts of a security guard at a supermarket. *Duran*, 921 S.W.2d at 788. In *Westhill Management, Inc.*, the First Court of Appeals did not specifically mention the personal character exception, but it cited *Dupree* in holding a management company liable for the torts of its independent-contractor security guard. *Westhill Mgmt., Inc.*, 1988 WL 46399, at *3. The Fifth Court of Appeals, however, refused to apply the personal character exception to the acts of a security guard because it found that the tortious conduct in that case was not intentional. *Ross*, 796 S.W.2d at 213–14. It therefore appears that the Texas courts that have considered the personal character exception have limited its application to the intentional acts of independent-contractor security guards. And before *Fifth Club*, only two Texas courts have actually applied the personal character exception to hold businesses vicariously liable for the actions of their independent-contractor security guards. *See Dupree*, 542 S.W.2d at 890; *Duran*, 921 S.W.2d at 788. Those cases have generally not provided an in-depth analysis of the personal character exception, so we look to other states for guidance in examining the exception's origin and purpose.

A number of states have adopted a personal character exception, or a rule that allows employers or premises owners to be held liable for the acts of independent contractors in the security context. *See* Robert A. Brazener, Annotation, *Liability of One Contracting for Private Police or Security Service for Acts of Personnel Supplied*, 38 A.L.R.3d 1332 (1971).[3] There

---

**3.** *See also Malvo v. J.C. Penney Co.*, 512 P.2d 575, 583 n. 13 (Alaska 1973) ("[T]he duty owed to the public by a store owner seeking to protect his property may be nondelegable in certain circumstances."); *Tarzia v. Great Atl. & Pac. Tea Co.*, 52 Conn.App. 136, 727 A.2d 219, 225 (1999) ("The possessor of premises who has invited persons to those premises for a business purpose cannot escape liability for a claimed breach of its duty to exercise reasonable care to keep the premises in a safe condition by hiring another to maintain the premises in a safe condition."); *Peachtree-Cain Co. v. McBee*, 170 Ga.App. 38, 316 S.E.2d 9, 10–11 (1984), *aff'd*, 254 Ga. 91, 327 S.E.2d 188, 191 (1985) (holding that it was proper to impose liability on property owners for the intentional torts of security personnel hired to protect their property be-cause of the "opportunities for gross injustice"); *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 925 P.2d 1175, 1179 (1996) ("However, in the situation where a property owner hires security personnel to protect his or her premises and patrons, that property owner has a personal and nondelegable duty to provide responsible security personnel."); *Adams*, 257 N.Y.S. at 781–82 (holding that if a store owner receives the benefit of having a security guard do surveillance for criminal activity then he should also be subject to liability for false arrest of the persons the security guard tries to detain); *Hendricks*, 159 S.E.2d at 367–68 (holding that hiring security personnel to protect one's property is a non-delegable and personal duty that subjects the employer to liability for the torts of its security personnel); *Szymanski*, 74 N.E.2d at 206–

appear to be at least two reasons why some states have adopted this exception: a nondelegable duty to keep premises safe, and public policy reasons relating to security work in general. Because these reasons are not applicable under Texas law, and have not been otherwise addressed by the Legislature, we are not persuaded that Texas should adopt such a rule.

Several states have relied on the nature of premises liability and the protection of premises to find liability for employers or business owners for the acts of their independent contractors.[4] Some states that have recognized the personal character exception have done so because the state law imposed a nondelegable or personal duty on the business owner to keep the premises safe, therefore making the business owner responsible for the acts of independent contractors hired to keep the premises safe. *See FPI Atlanta, L.P. v. Seaton,* 240 Ga.App. 880, 524 S.E.2d 524, 530–31 (1999) (holding that landowners who were under a Georgia statute imposing a duty to keep their land safe for invitees could be held liable for the acts of security personnel hired to keep the land safe); *see also* GA. CODE ANN. § 51–3–1 (2000) ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."); *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285 289 (1969) (holding that when owners were subject to a statutory duty to keep their patrons safe they could not escape liability for injuries to their racetrack patrons by hiring third parties to protect them). However, this case is not based on premises liability, but involves alleged vicarious liability for the acts of an independent contractor.

Several states addressing a personal character exception have done so based on a public policy that business owners should not have the benefit of surveillance or protection of their property without the

07 (same); *Halliburton–Abbott Co. v. Hodge,* 172 Okla. 175, 44 P.2d 122, 125–26 (1935) ("The weight of authority seems to be that one may not employ or contract with a special agent or detective to ferret out the irregularities of his employees and then escape liability for malicious prosecution or false arrest on the ground that the agent is an independent contractor."); *Pryor v. Southbrook Mall Assocs.,* No. 02A01–9709–CV–00217, 1998 WL 802005, at *4–5 (Tenn.Ct.App. Nov.18, 1998) ("Thus, a business that contracts with an independent contractor to supply security guards will be liable for the guards' intentional torts against customers and invitees of the place of business."); *W.T. Grant Co. v. Owens,* 149 Va. 906, 141 S.E. 860, 866 (1928) ("The owner of an operation or enterprise cannot, by securing through other special agents ... obtain any immunity from liability for malicious prosecutions which such owner would not be equally entitled to if he himself directly selected and paid the agents and expressly retained the power of control and removal.

When he undertakes these functions, his duties are personal and non-assignable, and where he arranges for and accepts the service, he will not be permitted to say that the relationship of master and servant does not exist.") (quoting *Clinchfield Coal Corp. v. Redd,* 123 Va. 420, 96 S.E. 836, 840 (1918)). *But see Mahon v. City of Bethlehem,* 898 F.Supp. 310, 313–15 (E.D.Pa.1995) (declining to adopt the exception because the Restatement does not adopt it and "Pennsylvania is reluctant to add new exceptions to the independent contractor shield.").

4. *See Malvo,* 512 P.2d at 583 n. 13; *Tarzia,* 727 A.2d at 225; *FPI Atlanta, L.P. v. Seaton,* 240 Ga.App. 880, 524 S.E.2d 524, 530–31 (1999); *Peachtree–Cain Co.,* 316 S.E.2d at 10–11; *Rockwell,* 925 P.2d at 1179–80; *Hendricks,* 159 S.E.2d at 366; *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285, 289 (1969); *Pryor,* 1998 WL 802005, at *4–5; *W.T. Grant Co.,* 141 S.E. at 866.

penalties for unlawful activities by their independent contractors performing protective or security functions.[5] Those cases emphasize the possibility of abuse when a business owner is allowed to hire a detective agency or security guard to help protect its premises and its invitees, but cannot be held liable for the actions of the guards. *See, e.g., Peachtree–Cain Co. v. McBee,* 170 Ga.App. 38, 316 S.E.2d 9, 11 (1984), *aff'd,* 254 Ga. 91, 327 S.E.2d 188, 191 (1985); *Adams,* 257 N.Y.S. at 781–82. Those cases also appear to identify security work as an exclusive category where vicarious liability can be present, regardless of the worker's status as an independent contractor. *See, e.g., Peachtree–Cain Co.,* 316 S.E.2d at 11; *Adams,* 257 N.Y.S. at 781–82.

■■■ In Texas, business owners and employers alike are generally held liable for an independent contractor's tortious acts only if the employer maintains detailed control over the independent contractor's acts or if the work itself involves a nondelegable duty, whether inherently dangerous or statutorily prescribed. *See Shell Oil Co. v. Khan,* 138 S.W.3d 288, 292 (Tex.2004); *Lee Lewis Constr., Inc.,* 70 S.W.3d at 794 n. 36 (inherently dangerous activities); *MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151, 153 (Tex.1992) (statutory imposition). A duty is nondelegable when it "is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." *MBank El Paso, N.A.,* 836 S.W.2d at 153.

■■■ We have recognized a policy in favor of allowing employer liability when the independent contractor's work is inherently dangerous:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

*Lee Lewis Constr., Inc.,* 70 S.W.3d at 794 n. 36 (quoting RESTATEMENT (SECOND) OF TORTS § 427 (1965)).[6] Inherently dangerous activity stems from the activity itself rather than the manner of performance, so the responsibility for creating the danger cannot be shifted completely to the contractor performing the work, while ignoring the employer. *See* RESTATEMENT (SECOND) OF TORTS §§ 427, 427A. But Ramirez is basing his claim in this Court on what he views as the personal nature or character of security work; he has not argued that security work is inherently dangerous.

Some statutes impose certain nondelegable duties on businesses, making the business liable for acts violating the duty, even if the duty is being performed by an independent contractor. *See MBank El Paso, N.A.,* 836 S.W.2d at 153 (discussing section 9–503 of the Uniform Commercial Code); *see also Konar v. PFL Life Ins. Co.,* 840 A.2d 1115, 1117–19 (R.I.2004) (refusing to extend an exception for security

---

5. *See Peachtree–Cain Co.,* 316 S.E.2d at 10–11; *Rockwell,* 925 P.2d at 1179–80; *Adams,* 257 N.Y.S. at 781–82; *Hendricks,* 159 S.E.2d at 367–68; *Szymanski,* 74 N.E.2d at 206–07; *Halliburton–Abbott Co.,* 44 P.2d at 126; *W.T. Grant Co.,* 141 S.E. at 866; *Clinchfield Coal Corp.,* 96 S.E. at 840.

6. The court of appeals in *Dupree* concluded, based on the specific facts of the case, that security work was not inherently dangerous. 542 S.W.2d at 888.

work beyond statutorily-created duties mandating security or protection of the premises); RESTATEMENT (SECOND) OF TORTS § 424 ("One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."). However, the Legislature has not identified security work as carrying such nondelegable duties or carved out a special exception allowing business owners or employers to be held liable for the conduct of their independent-contractor security personnel.

■ We decline to recognize a personal character exception to the rule that an employer is generally insulated from liability for the tortious acts of its independent contractors. Instead, whether an employer can be liable for security work performed by an independent contractor is determined by the facts of the case analyzed under the control exception and the nondelegable duty exception, which includes inherently dangerous activities and statutorily-imposed duties. In this case the plaintiff could, and did, sue the nightclub alleging direct liability for negligent hiring. Therefore, we see no reason to expand an employer's liability for the acts of its independent contractor solely because the contractor is hired to perform security work, and we hold that there is no personal character exception to the general rule shielding an employer from liability for tortious acts of its independent contractors.

We disapprove *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.* and *Duran v. Furr's Supermarkets, Inc.* to the extent they hold that the personal character of security work can cause an employer to be liable

for the actions of their independent contractors absent control over the details of their work. *See Dupree,* 542 S.W.2d at 888–90; *Duran,* 921 S.W.2d at 787–88.

Because the character of West's work for Fifth Club alone does not impose employer liability, we conclude Fifth Club is not vicariously liable to Ramirez.

## III. Negligence and Malice in Hiring

■ Fifth Club further contends there is legally insufficient evidence to support the jury's finding that it was negligent or malicious in hiring and retaining West. We agree. Ramirez argues that because Fifth Club did not perform a background check on West, did not require a job application, and allowed a third party to hire West, it was negligent in hiring him. Negligence in hiring requires that the employer's "failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege." *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995).

There is no evidence to support the jury's finding that Fifth Club's lack of a background check of West caused the altercation or the injuries. As to negligence in hiring, the evidence indicates that even if Fifth Club had investigated West before hiring him, nothing would have been found that would cause a reasonable employer to not hire West. *Cf. Doe,* 907 S.W.2d at 477 (holding that the Boys Club did not breach any duty to screen or investigate its volunteers because the club would not have found anything in a volunteer's background that would cause the club not to allow him to volunteer even if it had screened or investigated the volunteer). The evidence showed that West violated a requirement in the applicable peace officer manual by accepting employment at the club, and that his primary employer had reprimanded West for the use of a profani-

ty to a member of the public. This evidence is not sufficient to have put Fifth Club on notice that hiring West would create a risk of harm to the public, even if Fifth Club had done a background check. Ramirez argues that if Fifth Club had known that West was violating his primary employer's policies, it would not have hired him. But this statement, even if true, only shows that Fifth Club provided a condition—the hiring of West—that allowed for the altercation. It does not show foreseeability of harm to the public by West. *Cf. id.* at 477–78. Therefore, there is no evidence to support the jury's finding that Fifth Club was negligent, or malicious, in hiring West.

■ Also, no evidence was presented that West was an incompetent or unfit security guard such that Fifth Club was negligent in retaining him after he was hired. Fifth Club hired West as a security guard to assist in protecting its property and patrons, a job specially suited to a trained peace officer. *Cf. Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 227–28 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that because peace officers are specifically trained to direct traffic, the employer was not negligent in hiring officers for that function because it failed to investigate the officers' backgrounds). While Ramirez presented evidence that Fifth Club did not perform a background check or train West, West's status as a certified peace officer made him fit for this type of work, and there was no conflicting evidence that he was unfit for the security position prior to the incident in question.

Because there is no evidence to show that Fifth Club's alleged negligence in hiring West could have caused Ramirez's injury, we reverse the court of appeals' judgment against Fifth Club on the negligence and malice issues, and we render a take-nothing judgment in favor of Fifth Club.

## IV. Future Mental Anguish Damages

■ West argues there is legally insufficient evidence to support the jury's award of $20,000 in future mental anguish damages.[7] We disagree. In *Parkway Co. v. Woodruff*, this Court held that mental anguish awards will pass a legal sufficiency review if evidence is presented describing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." 901 S.W.2d 434, 444 (Tex.1995). Furthermore, "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Id.* at 445; *see also Brown v. Sullivan*, 71 Tex. 470, 10 S.W. 288, 290 (1888) ("Where serious bodily injury is inflicted involving fractures, dislocations, etc., and results in protracted disability and confinement to bed, we know that some degree of physical and mental suffering is the necessary result.").

In this case, Ramirez and his wife testified that Ramirez continued to be depressed, humiliated, non-communicative, unable to sleep, and angry, continued to have headaches and nightmares, and that his daily activities and his relationships with his wife and daughter continued to be detrimentally affected almost two years after the incident. Ramirez also presented evidence of the severity of the intentional beating by West, including significant injuries to his head and body, his loss of consciousness, and his visits to the hospital. The evidence shows the nature of Ramirez's mental anguish, its lasting dura-

---

7. Because we hold that Fifth Club is not vicariously or directly liable for damages, we do not address its argument on the damages issue.

tion, and the severity of his injuries, and is therefore legally sufficient to support future mental anguish damages.

The dissent points to this Court's opinions in *Saenz* and *Parkway* as support for its conclusion that the evidence in this case, as it was in those cases, is insufficient to support the jury's award of future mental anguish damages. At 801 (citing *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607 (Tex.1996); *Parkway,* 901 S.W.2d 434). But what distinguishes those cases is that neither of them, *Saenz* (wrongful inducement to settle a workers compensation claim) or *Parkway* (flooded home), involved a claim for personal injuries. *See Saenz,* 925 S.W.2d at 608–10; *Parkway,* 901 S.W.2d at 436–37. We believe the severe beating received by Ramirez provided an adequate basis for the jury to reasonably conclude that he would continue to suffer substantial disruptions in his daily routine of the kind described in his and his wife's testimony that he had already suffered in the past. The evidence in this case amounts to far more than worry that medical bills might not get paid, as in *Saenz,* or that someone is disturbed and upset, as in *Parkway.* *See Saenz,* 925 S.W.2d at 614; *Parkway,* 901 S.W.2d at 445.

\* \* \* \* \* \*

In summary, we reverse the court of appeals' judgment against Fifth Club based on jury findings of vicarious liability negligence and malice in hiring, and we enter a take-nothing judgment in Fifth Club's favor. We affirm the court of appeals' judgment against West as to future mental anguish damages.

Justice BRISTER filed a concurring opinion, in which Chief Justice JEFFERSON joined.

Justice WILLETT filed a dissenting opinion, in which Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON joined.

Justice BRISTER, joined by Chief Justice JEFFERSON, concurring.

I join fully in the Court's opinion, and write separately only to detail why we cannot adopt the blanket rule that first appeared in *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.,* 542 S.W.2d 882, 888 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), and was adopted by the court of appeals here. *See* 144 S.W.3d 574, 588–89 (Tex.App.-Austin 2004).

The general rule in Texas and everywhere else has long been (in the words of the Restatement) that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." RESTATEMENT (SECOND) OF TORTS § 409. But both the Restatement and Texas courts recognize a number of exceptions to this general rule.

First, one who retains control over the manner in which an independent contractor performs its work is subject to liability for failing to exercise that control with reasonable care. *See Lee Lewis Const., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex. 2001); RESTATEMENT (SECOND) OF TORTS § 414. As the "supreme test" for vicarious liability, the presence or absence of control commonly sets the boundaries for such liability. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 542 (Tex.2003). As the Court notes, there is no evidence that Fifth Club retained such control here.

Second, if a statute or administrative regulation imposes a duty to take specified safeguards or precautions, that duty (and any liability resulting from its breach) cannot be delegated to an independent contractor. RESTATEMENT (SECOND)

OF TORTS at § 424, cmt. a. Thus, we held in *MBank El Paso, N.A. v. Sanchez,* that because the U.C.C. imposes on secured creditors a duty not to breach the peace while repossessing collateral, a secured party was vicariously liable for such a breach by the independent contractor hired for that purpose. 836 S.W.2d 151, 152 (Tex.1992). Again, there is no evidence that any statute or regulation imposed a nondelegable duty here.

Third, Texas law and the Restatement recognize an exception for work that is inherently dangerous. *See Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 911 (Tex. 1981); *Loyd v. Herrington,* 143 Tex. 135, 182 S.W.2d 1003, 1004 (1944); RESTATEMENT (SECOND) OF TORTS § 427A. Because the danger in such cases stems from the activity itself rather than the manner of performance, responsibility for creating the danger cannot be shifted completely to the contractor performing it. *See* RESTATEMENT (SECOND) OF TORTS § 427A, cmt. b. But this exception is a narrow one. *See MBank El Paso,* 836 S.W.2d at 159 (Hecht, J., dissenting) (noting Texas courts have refused to characterize as "inherently dangerous" activities involving heavy equipment, inflammable materials, electrical work, blasting, and refinery operations). While we have reserved the question whether it includes security work, *see Ross v. Texas One P'ship,* 806 S.W.2d 222, 222 (Tex.1991), the parties here do not argue that it does.

The question presented today is whether to adopt an additional exception for independent contractors hired to protect private property, based on the "personal character" of that activity. *See Dupree,* 542 S.W.2d at 888. The Restatement does not include such an exception, and for several reasons we should not create one.

First, we have refused to create new exceptions when the public safety is adequately protected by existing rules. For example, in *Baptist Memorial Hospital System v. Sampson,* we refused to impose vicarious liability on hospitals for malpractice by emergency room physicians, noting that patients could bring suit against the negligent physician or against the hospital for violating duties owed directly to patients. 969 S.W.2d 945, 949 (Tex.1998). Here, existing law allows patrons to sue security contractors directly, as Ramirez did.[1]

Second, it is unclear what the boundaries of this "personal character" exception might be. The *Dupree* court stated that "[t]here are *certain duties* that an owner of a store cannot absolve itself from liability by delegating the performance thereof to an independent contractor," *see* 542 S.W.2d at 890 (emphasis added), but did not say which duties might or might not be included. Reviewing cases from other jurisdictions, the court discovered "the principle that he who expects to derive advantage from an act which is done by another for him, must answer for any intentional injury which a third party may sustain from it." *Id.* at 889. But presumably *everyone* who hires an independent contractor expects to derive advantage from doing so; if this is the only principle, then all of us are liable for the intentional torts of those we hire—even if we only wanted

---

1. The *Dupree* court adopted its "personal character" exception so that a company could not "subject its patrons to the hazards of an irresponsible detective agency while escaping all danger of the legal ramifications adverse to itself." *Dupree,* 542 S.W.2d at 889. But owners cannot escape liability by hiring irresponsible contractors; to the contrary, both Texas law and the Restatement recognize explicit liability if they do. *See Salinas v. Fort Worth Cab & Baggage Co. Inc.,* 725 S.W.2d 701, 703 (Tex.1987); RESTATEMENT (SECOND) OF TORTS § 411.

them to provide package delivery, babysitting, internet access, or lawn care.

Third, a blanket rule adopting vicarious liability for security services overlooks the many different circumstances in which such services are retained. The Restatement suggests that the same liability rule should not necessarily apply to widows and land developers:

> [A]n inexperienced widow employing a contractor to build a house is not to be expected to have the same information, or to make the same inquiries, as to whether the work to be done is likely to create a peculiar risk of physical harm to others, or to require special precautions, as is a real estate development company employing a contractor to build the same house.

RESTATEMENT (SECOND) OF TORTS § 413, cmt. f; see also id. § 411, cmt. c. The Dupree court saw the case before it as one in which a corporation hired a "detective firm to ferret out the irregularities of its customers ... thereby intentionally exposing its customers to the possible tortious conduct of the guards." Dupree, 542 S.W.2d at 889. But the rule it declared would impose liability on all who hire security guards—widows, schools, churches, neighborhood associations, election officials, and many others—regardless of their motives or expertise. Because the individual circumstances of those who seek security may be important, liability should not be imposed in all cases as a matter of law.

Fourth, Texas law imposes certain duties on peace officers that no private employer can control. Peace officers have a duty to prevent crime and arrest offenders, off-duty or not. See TEX. CODE CRIM. PROC. art. 2.13; City of Dallas v. Half Price Books, Records, Magazines, Inc., 883 S.W.2d 374, 377 (Tex.App.-Dallas 1994, no writ) ("An off-duty police officer who observes a crime immediately becomes an on-duty police officer."). In doing so, peace officers exercise a nondelgable duty that is imposed by state law, not by a private employer.

Finally, hiring either an employee or an independent contractor includes many considerations beyond "escaping all danger" of vicarious liability, as the Dupree court assumed. Dupree, 542 S.W.2d at 889. Independent contractors are usually hired for their competence, not their incompetence. See Anchor Cas. Co. v. Hartsfield, 390 S.W.2d 469, 471 (Tex.1965); Pitchfork Land & Cattle Co. v. King, 162 Tex. 331, 346 S.W.2d 598, 603 (1961). But the decision to hire an employee or an independent contractor may turn on many other factors, including social security or income taxes, see Hartsfield, 390 S.W.2d at 471, worker's compensation coverage, see Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 477 (Tex.2005), product liability exposure, see FFE Transp. Servs., Inc. v. Fulgham, 154 S.W.3d 84, 89 (Tex.2004), or professional independence, see State Farm Mut. Auto. Ins. Co. v. Traver, 980 S.W.2d 625, 627 (Tex.1998). Moreover, workers themselves may prefer independent contractor status, as it allows them to control their hours, jobs, and location. See, e.g., Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 614 (Tex.2004); Hartsfield, 390 S.W.2d at 471. Courts cannot assume (as the Dupree court appeared to do) that just because vicarious liability is the most important aspect of independent-contractor status to us, it must have been the primary motivation for everyone else. By designating some activities as too "personal" to delegate to nonemployees, the judicial system would mandate a particular employment relationship that everyone else may find neither desirable nor appropriate.

We cannot adopt a rule that helps out a particularly sympathetic litigant but does

not apply to other, similar cases. While the Legislature could make nightclubs or grocery stores strictly liable for the intentional torts of their security contractors, it has never done so, and it is difficult for this Court to adopt a common-law rule that applies only to them. Accordingly, I join in the Court's judgment and opinion.

Justice WILLETT, joined by Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON, dissenting in part.

I join fully in the reasoning and conclusions set forth in Parts I–III of the majority opinion, but disagree with Part IV's discussion regarding future mental anguish damages. Because I believe the evidence was legally insufficient to support the jury's award of damages for Ramirez's future mental anguish, I respectfully dissent from this part of the Court's ruling.

In conducting a legal sufficiency review of mental anguish damages, we have held that such damages are recoverable if the plaintiff provides (1) direct evidence of the nature, duration, or severity of his anguish establishing a substantial disruption in his daily routine, or (2) other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Application of this standard to the evidence presented does not always submit to a simple analysis. As the majority recognizes, we noted in *Parkway* that "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." 901 S.W.2d at 445. In addition, damages for future mental anguish are recoverable only if the plaintiff demonstrates a "reasonable probability" that past mental anguish will continue in the future. *Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 230 S.W.2d 522, 524–25 (1950).

Ramirez offered proof that he suffered a serious physical assault. West does not challenge the legal sufficiency of proof of *past* mental anguish. I agree with West, however, that the proof was legally insufficient to support an award of *future* mental anguish damages. The altercation in issue occurred on September 17, 2000, and the trial occurred more than two years later, in Fall 2002.

Focusing on the evidence of Ramirez's future mental anguish, Ramirez, when asked how the incident has affected him, testified:

> I am the kind of person that I don't talk to people about what's going on with me, not even to my wife. All these, I have kept inside, and I have been having a lot of communication problems with my family. *I don't know if this is going to affect me in the future.* This is what has happened, and I have a lot of anger inside of me for what happened, for what they did to me.

Ramirez also testified that "I have everything inside of me," that he did not want to talk to his wife about the incident, that he was generally less communicative, and that he had taken an anger management course.

Ramirez's wife testified that Ramirez is less communicative with his daughter, and that

> It's very hard for him to talk to people. And even us, when we—whenever we talk or something like this comes up or anything—this issue comes up, he doesn't want to talk about it. He feels very bad that—what happened to him. I could see him—I'm with him all the time, and I could see that he can't sleep well. He's always tossing and turning.

I know he has nightmares. He doesn't tell me but I can see it.

She also testified that Ramirez became depressed and manifested various symptoms of this depression right after the incident, including crying and being "spaced out," and that "he's still like that now," but "probably not as much as he was . . . ." She testified that "even now . . . I try not to push him because I can only imagine what he feels."

With regard to future mental anguish, this evidence does not in my view demonstrate a substantial disruption in Ramirez's daily routine or show that Ramirez's ability to work, attend to his personal needs, or engage in other aspects of daily living will be substantially impaired.

Nor does this evidence constitute proof of a high degree of future mental pain and distress amounting to more than mere worry, anxiety, vexation, embarrassment, or anger. Ramirez's testimony that he continued to carry a lot of anger, and that he does not want to talk about the incident, and his wife's testimony that he has nightmares, tosses and turns at night, and has become less communicative, do not amount to a high degree of future mental pain and distress.

By comparison, in *Saenz* a plaintiff testified that the defendant's conduct had caused her to worry a lot about future medical bills and to worry that she would lose her house. 925 S.W.2d at 614. While accepting that these concerns were real and understandable, we held that they did not rise to the level of compensable past or future mental anguish. *Id.* In *Parkway*, which involved a house being flooded multiple times due to faulty drainage, we did not question the sincerity of a husband's testimony that he was "very disturbed" by the defendant's conduct, or his wife's testimony that the husband "would come home and he would become very quiet" and that

the defendant's conduct had caused friction in the marriage and "changed our life style." 901 S.W.2d at 445. We held, however, that this evidence did not rise to a level of compensable mental anguish damages. *Id.*

Granted, those cases, unlike the present case, did not involve personal injury claims. But our decision in *Fisher v. Coastal Transport Co.* did, and in that case we applied the long-established "reasonable probability" test and said future mental anguish damages are recoverable only if the plaintiff shows that future ill effects are reasonably probable, not merely possible. 230 S.W.2d at 524–25. *Cf. Lubbock County v. Strube*, 953 S.W.2d 847, 856–57 (Tex.App.—Austin 1997, pet. denied) (a wrongful termination case holding that plaintiff was entitled to past but not future mental anguish damages, where plaintiff suffered from depression and withdrew "into a shell" but failed to demonstrate that her past mental anguish would continue in the future).

I in no way contest Ramirez's genuineness, and concede that definitions of "mental anguish" are inherently nebulous and imprecise, requiring reviewing juries and courts to weigh shades and degrees of plaintiffs' emotional reactions. But Ramirez himself admits he does not know how—or, more fundamentally, *if*—the altercation will affect him in the future. *Fisher*, 230 S.W.2d at 524 (noting that fairness and justice dictate that jurors "are limited to the bounds of reasonable probability and cannot wander at will in the realms of mere possibility").

All in all, the descriptive evidence in the pending case is not qualitatively or quantitatively different from the evidence in *Saenz* and *Parkway*, and as Ramirez's own testimony suggests, does not establish a probable substantial disruption in Ramirez's daily routine or show emotions be-

yond the realm of worry, anxiety, vexation, embarrassment, or anger needed to support an award of future mental anguish damages.