**Affirm and Opinion Filed May 15, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00006-CV

**BARRETT HORTON, Appellant**

**V.**

**MMM VENTURES LLC, INDIVIDUALLY AND AS GENERAL PARTNER OF CRESCENT ESTATES CUSTOM HOMES LP, AND CRESCENT ESTATES CUSTOM HOMES LP, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-07726**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Partida-Kipness

Appellant Barrett Horton appeals the granting of appellees MMM Ventures LLC and Crescent Estate Custom Homes LP's (collectively Crescent) traditional and no-evidence motion for summary judgment. Horton argues the trial court erred by granting summary judgment on all of the claims he brought against Crescent. We affirm.

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

# BACKGROUND

Horton filed his underlying lawsuit seeking damages for injuries he sustained on June 11, 2018 in a workplace accident. Crescent was the general contractor for a construction project known as the Entrada Project. Crescent employed Henry Steel Construction, LLC as a subcontractor to perform steel erection work on the Entrada Project. Horton worked with Henry Steel, but under independent contractor status.

On the date of Horton's injury, Henry Steel was moving a load of steel weighing approximately 6,000 pounds into the basement of one of the townhouses being constructed in the Entrada Project. Henry Steel's owner, Bruce White, was directing the project. White was standing on a retaining wall while Horton was in the basement unloading the steel. A Henry Steel employee, Francisco Mungia, operated the forklift, known as the Skytrak, to lower the steel into the basement.

While the steel was being moved, the load slipped off of the forks of the Skytrak and fell approximately three feet into the basement onto wooden pallets. Horton, trying to guide the steel down, ended up underneath part of the steel load, causing injuries to his leg and foot and crushing his right arm. At the time of the accident, the Skytrak used was either borrowed from another subcontractor, M & C Roofing, or was one White had rented himself.

There were no Crescent employees present at the townhouse location at the time of Horton's accident, involved in the planning or execution of the steel lowering, or directing Henry Steel on how to do its job. Although the two Crescent

project managers were on the Entrada Project site at the time, they were at another location on the property.

Horton filed suit against Henry Steel and Crescent alleging claims and theories of negligence, respondeat superior, negligent undertaking, and negligence per se. Crescent filed a traditional and no-evidence motion for summary judgment and attached deposition testimony from Horton and representatives from Henry Steel and Crescent Homes. Horton's response included the same deposition testimony and a declaration from his safety expert, John Hoffman, who found Mungia was at fault. The trial court granted Crescent's motion and dismissed Horton's claims against them with prejudice without specifying which grounds it relied upon from Crescent's motion. The trial court granted Crescent's request to sever its claims and this appeal followed.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

A party may combine in a single motion a request for summary judgment under no-evidence and traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c), (i). When a party seeks summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach the issue of whether the trial court erred in granting summary judgment under the traditional standard. *See Ridgway*, 135 S.W.3d at 600; *see also* TEX. R. CIV. P. 166a(c).

To be entitled to traditional summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *JLB Builders*, 622 S.W.3d at 864; *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); TEX. R. CIV. P. 166(a)(c). By contrast, a party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166(a)(i). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id*; *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). A "no-evidence summary

–4–

judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing TEX. R. CIV. P. 166(a)(i)).

## ANALYSIS

When analyzing a negligence claim, we must first ask whether the defendant owed the plaintiff a duty. *JLB Builders*, 622 S.W.3d at 864. Whether Crescent owed Horton a duty is governed by the law concerning a general contractor's duties to a subcontractor's employee. *Id.* As a general rule, one who employs an independent contractor has no duty to ensure that the contractor safely performs his work. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020). There is an exception to the rule when "the employer retains some control over the manner in which the contractor performs the work that causes the damage." *Id.* (quoting *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006)). A plaintiff can prove the requisite control by establishing that the general contractor either actually controlled the manner in which the subcontractor performed its work or had a contractual right to do so. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (citing *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)). "Control must relate to the condition or activity that caused the injury." *Clayton W. Williams, Jr., Inc. v. Olivio*, 952 S.W.2d 523, 528 (Tex. 1997). Further, the control retained or exercised by the general contractor must "extend [] to 'the means, methods, or details of the

independent contractor's work.'" *Arredondo*, 612 S.W.3d at 295 (quoting *Bright*, 89 S.W.3d at 606).

**A.    Skytrak**

Horton argues that Crescent owed him a duty because Crescent exercised control of the Skytrak used. Horton states that he submitted testimony from Mickey White, the owner of M&C Roofing, to support his contention that Crescent had control of the Skytrak. Mickey White stated:

> I agreed with Mr. Dees that M&C would leave the skytrack [sic] that it rented at the Entrada site so that other subcontractors would have access to it for their use in completing their work on the Project.
>
> . . . .
>
> When M&C Roofing was not using the skytrack [sic], I considered it to be under Crescent's control in that Crescent, through Michael Dees, had control over who could use the skytrack [sic] and who could not use it, and how it was to be used.

However, Mickey White also stated that he was not present at the site on the day of the accident and did not know what had occurred related to the Skytrak. The testimony from witnesses present on the date of the accident did not establish that Crescent exercised control over the Skytrak. Bruce White stated he thought the Skytrak used was one he rented, but later said he could not remember. White also stated the Crescent representative would normally ask the other subcontractors if people needed to borrow equipment, but he could not remember if he spoke to a Crescent representative about borrowing a Skytrak that day. Mungia testified that he

could not remember if the Skytrak was White's or not, but recalled it was already on site the day of the accident. Modglin stated in his testimony that if a subcontractor asked to borrow the Skytrak, he would have told them to ask the roofer.

The evidence Horton points us to from Mickey White does not raise a fact issue regarding control of the Skytrak. Mickey White was not present at the Entrada site on the date of the accident and did not know what occurred during the time in question. His testimony was speculative at best. The witnesses who were present did not believe that Crescent had control of the Skytrak and confirmed that permission was needed from the subcontractor who had rented the Skytrak. Horton does not establish Crescent owned him any duty related to the Skytrak.

## B. Actual Control

Next we need to determine if Crescent exercised actual control over Horton's activities. In reviewing the summary judgment evidence, both parties included deposition testimony from Horton, Bruce White, Mungia, Crescent's project manager Michael Dees, and Crescent's construction manager Bob Modglin. White, Dees, and Modglin testified regarding the procedures used between Crescent and the subcontractors. Dees and Modglin stated they were on the Entrada site on the date of Horton's accident, but neither were in the area at the time it occurred. The Crescent representatives explained they knew what the subcontractors were doing on the project based on the plans submitted to Crescent. The Crescent representatives would talk to the head subcontractor about the plans and where items being used and

installed were placed, but both Crescent representatives said the subcontractors decide how the job will be conducted. White was the head subcontractor on this project for Henry Steel. Modglin explained he is aware of what work the subcontractors are performing because of the plans submitted and uses the plans to determine scheduling for the different subcontractors they hired. Modglin and Dees both agreed they would walk the project and observe the work being conducted, but said if they saw workers performing the job in an unsafe manner, they would talk to the subcontractor, not his employees. However, neither observed Henry Steel's work that day, and there was no discussion of the condition of the job site, safe or unsafe.

It is a well-settled rule that an employer's "general right to order work started and stopped" and "to direct when and where the work [i]s done" does not give rise to a duty of care. *Arredondo*, 612 S.W.3d at 295. The fact Crescent controlled the overall timing and sequence of work being performed by their subcontractors "merely indicates that [Crescent] was performing the duties of a general contractor." *JLB Builders*, 622 S.W.3d at 866. The Texas Supreme Court has stated, in order to give rise to a duty, the control exercised must extend to the timing and sequence of the particular independent contractor's work, such as which of the subcontractor's employees "should perform what task and at what point in time." *Bright*, 89 S.W.3d at 609.

Here, there was no evidence that indicates Crescent exercised any control over the timing and sequence of Henry Steel's employees' work or Horton's work as an

independent contractor. White testified that he controlled how the job would be performed and told Horton what they were going to do to lower the steel into the basement. Mungia agreed and stated that White decided how to move the steel and perform the job. Because White admitted he was the person who determined and controlled how the job would proceed, Horton presented no evidence to show that Crescent exercised actual control of how Henry Steel or Horton preformed the job. With no actual control, Crescent would not be liable. The trial court did not err by granting summary judgment for Crescent. We overrule Horton's issue.

## CONCLUSION

Based on the record before us, the trial court did not err in granting summary judgment in favor of Crescent. We affirm the trial court's judgment.


220006f.p05

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARRETT HORTON, Appellant

No. 05-22-00006-CV     V.

MMM VENTURES LLC, INDIVIDUALLY AND AS GENERAL PARTNER OF CRESCENT ESTATES CUSTOM HOMES LP, AND CRESCENT ESTATES CUSTOM HOMES LP, Appellees

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-22-07726. Opinion delivered by Justice Partida-Kipness. Justices Nowell and Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MMM VENTURES LLC, INDIVIDUALLY AND AS GENERAL PARTNER OF CRESCENT ESTATES CUSTOM HOMES LP, AND CRESCENT ESTATES CUSTOM HOMES LP recover its costs of this appeal from appellant BARRETT HORTON.

Judgment entered this 15th day of May 2023.