# Supreme Court of Texas

No. 25-0317

In re Home Depot U.S.A., Inc.,
*Relator*

On Petition for Writ of Mandamus

**Argued March 4, 2026**

JUSTICE DEVINE delivered the opinion of the Court.

A young man tragically lost his life when his motorcycle collided with a tractor-trailer owned and operated by a nationwide commercial motor carrier. The decedent's parents and his estate sued not only the trucking company and its driver, but also the customer whose goods were in transit at the time of the accident. The plaintiffs claim the customer is liable for the fatal accident—not because the customer created the risk, supplied a dangerous or defective instrumentality, or had control over the driver, the truck, or the premises, but because it engaged in a commercial transaction with the truck driver's employer. Texas law does not impose a duty of care on a passive shipper under the facts alleged. The plaintiffs' liability theory is not viable because it transforms the commonplace act of shipping goods into a basis for sweeping tort liability untethered from control, conduct, and risk.

Because the trial court should have granted the customer's motion to dismiss the plaintiffs' claims, we conditionally grant mandamus relief directing it to do so.

"[T]he existence of a legally cognizable duty is a prerequisite to all tort liability"[1] and "[t]he threshold inquiry in a negligence case."[2] Without it, there is no claim. When a cause of action lacks a basis in law,[3] Texas Rule of Civil Procedure 91a authorizes the defendant to move for dismissal. Dismissal is required when the pleadings do not entitle the claimant to the relief sought.[4] Whether that standard is met is a legal question we consider de novo based on the allegations in the plaintiffs' live petition, which we must accept as true.[5]

The pleadings in this wrongful-death and survival action allege that Natalio Garcia died because a driver employed by Werner Enterprises, Inc. ran a red light while operating a Werner-owned tractor-trailer on a public roadway. Werner is a nationwide commercial motor carrier subject to federal regulation and oversight by the Federal

---

[1] *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993).

[2] *Greater Hou. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

[3] *See id.* ("[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question."); *see also Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017) (explaining that duty may be determined by viewing the material facts in the light required by the case's procedural posture).

[4] TEX. R. CIV. P. 91a.1.

[5] *Id.* (requiring the court to take as true the plaintiff's pleaded facts and any reasonable inferences); *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020) ("We review the merits of a Rule 91a motion de novo.").

Motor Carrier Safety Administration (FMCSA).[6]  Garcia's parents and estate sued Werner and its driver for negligence and gross negligence.

The plaintiffs subsequently amended their petition to add the same negligence claims against Home Depot U.S.A., Inc.  No factual allegations tie Home Depot to the conduct that caused the accident.  The only connection between Home Depot and the accident is that, at the time of the collision, Werner's truck was transporting Home Depot's goods between stores pursuant to a commercial shipping arrangement. The pleadings do not allege that Home Depot owned, controlled, or operated the truck; employed or supervised the driver; directed the manner of the vehicle's operation; or supplied any defective or dangerous instrumentality.  Nor do the pleadings allege that the cargo's nature, size, weight, or method of loading were unusual, improper, hazardous, or otherwise caused the truck driver's failure to "comply with the law and heed the yellow traffic light, slow down and come to a safe and complete stop."  To the contrary, they allege the accident occurred because the driver "ignored the yellow light, then accelerated and ran a

_____

[6] The FMCSA, which is a part of the U.S. Department of Transportation, oversees safety regulations, licensing, vehicle-maintenance standards, and driver qualifications for companies that operate large commercial vehicles, like Werner. *See* 49 U.S.C. §§ 31136, 31502 (authorizing the establishment and prescription of regulations for the safe operation and equipment of motor carriers and commercial motor vehicles), 31301–31317 (establishing requirements for commercial driver's licenses and driver qualifications to ensure drivers meet established standards for safe operation of commercial vehicles); 49 C.F.R. pts. 350–399 (Federal Motor Carrier Safety Regulations), § 390.5 ("For-hire motor carrier means a person engaged in the transportation of goods or passengers for compensation."); TEX. TRANSP. CODE § 643.001(6) ("'Motor Carrier' means an individual . . . or other legal entity that controls, operates, or directs the operation of one or more vehicles that transport persons or cargo over a road or highway in this state.").

3

clear steady red traffic light." The pleadings describe only the routine transportation of Home Depot's goods by a commercial motor carrier.

The plaintiffs nonetheless contend that Home Depot was negligent in entrusting ordinary cargo to Werner because it knew or should have known that Werner hired reckless or incompetent drivers. More specifically, the plaintiffs assert that Home Depot: (1) failed to screen Werner and its drivers; (2) willfully overlooked Werner's FMCSA and Department of Transportation violations; (3) disregarded Werner's safety record, which included more than 850 "reportable commercial vehicle collisions"[7] in the two years preceding the accident; and (4) failed to independently investigate the fitness of the individual driver who was hauling Home Depot's goods. The plaintiffs do not allege, however, that Werner was unlicensed, unregistered, or otherwise unauthorized to operate as a motor carrier or that Werner lacked necessary permits or equipment. And while they broadly charge Home Depot with negligence in "[s]electing and hiring" Werner "over the 1.1 million other commercial vehicle carriers," they do not assert that Werner's official safety rating was anything other than satisfactory.[8]

---

[7] Whether an accident is "reportable" does not depend on a determination that the carrier is at fault. *See* Fed. Motor Carrier Safety Admin., *Frequently Asked Questions (FAQs)*, COMPLIANCE SAFETY ACCOUNTABILITY, https://csa.fmcsa.dot.gov/HelpCenter/GetFAQById/1203# (last visited May 11, 2026) (What crashes are included in the Safety Measurement System (SMS)?); *see also* 49 C.F.R. § 390.5T (defining "accident").

[8] *See* 49 C.F.R. §§ 385.5, .9 (governing determination of a safety rating based on consistency with the safety-fitness standard, which includes an evaluation of regulatory compliance, crash history, and related safety factors), pt. 385, app. B (explaining the safety-rating process and identifying "satisfactory" as the highest available safety rating).

In a Rule 91a motion to dismiss, Home Depot asserted that the plaintiffs' negligence claims fail as a matter of law because, under the pleaded facts, Home Depot was a mere shipper that owed no duty to the driving public arising from its commercial transaction with an independent, federally regulated motor carrier.[9] The trial court denied the motion, and the court of appeals summarily denied mandamus relief.[10] Because the pleadings allege no facts giving rise to a duty on Home Depot's part, the negligence claims have no basis in law and must be dismissed.

The plaintiffs' negligence theory depends on whether Home Depot can bear liability for failing to prevent the negligence of Werner's driver. Such a claim faces an uphill battle because Texas law does not lightly impose on one party a duty to answer for the conduct of another. Applicable here are two rules establishing important limits on tort liability and providing a basic allocation of responsibility to those who either create risks or control them.

---

[9] *Id.* §§ 376.2(k) ("Shipper. A person who sends or receives property which is transported in interstate or foreign commerce."), 390.5 ("Shipper means a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce, or who tenders hazardous materials to a motor carrier or driver of a commercial vehicle for transportation in interstate or intrastate commerce."); TEX. TRANSP. CODE § 623.001(2) ("'Shipper' means a person who consigns the movement of a shipment."); *Shipper*, BLACK'S LAW DICTIONARY, at 1661 (12th ed. 2024) ("Someone who ships goods to another [or] who contracts with a carrier for the transportation of cargo.").

[10] 727 S.W.3d 510, 511 (Tex. App.—Houston [14th Dist.] 2025).

First, we have recognized "time and again" that one generally has no duty to control the conduct of another.[11] Such a duty may arise in limited circumstances—when a special relationship exists; when the defendant has control over the injury-producing actor, instrumentality, or premises; or when the defendant's own conduct creates or increases the risk of harm.[12] No such circumstances are alleged here. According to the amended petition, Werner was an independent contractor conducting operations with its own employees and its own equipment on public roadways. Home Depot undertook no affirmative acts that created or increased the danger, and nothing about the cargo is alleged to have done so either. Rather, the accident was caused by the truck driver's alleged failure to heed a traffic signal.

Second, the law is settled that one who hires an independent contractor is generally not liable for the contractor's torts.[13] Narrow exceptions apply when the hiring party retains or exercises control over the details of the work or when a nondelegable duty is imposed by statute or common law, including when the work involves an inherently dangerous activity.[14] Control gives rise to liability based on the power to prevent the work from being done in a dangerous or unsafe manner.[15] When a duty is nondelegable, the employer cannot avoid responsibility

---

[11] *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 382 (Tex. 2024).

[12] *See, e.g.*, *Pagayon*, 536 S.W.3d at 504; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309-10 (Tex. 1983).

[13] *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006).

[14] *Id.* at 795.

[15] *Id.* at 791.

by delegating control to an independent contractor. Here, the plaintiffs have not invoked any exception to the general rule or pleaded facts that would support one. To justify a departure from the no-duty rule, they instead frame their theory as one of "direct" liability—negligent selection of an incompetent motor carrier—as opposed to "vicarious" liability for an independent contractor's tortious performance.

Both the premise and the distinction warrant clarification. As an initial matter, "we have not ruled definitively on the existence, elements, or scope" of a claim for negligent hiring or retention of either an employee or an independent contractor.[16] But even if such a claim is viable, it is no less derivative than vicarious liability.[17] Like negligent entrustment—a "factually similar" theory—negligent hiring requires the combined negligence of two actors: the employer's negligence in hiring the contractor and the contractor's subsequent negligent act or omission.[18] The plaintiffs' theory in this case goes a step further. Their claim that Home Depot negligently hired Werner who negligently hired a negligent driver is *derivative of* derivative liability. That is liability twice removed. Even assuming the validity of that theory, Home Depot had no duty to investigate Werner's competence because (1) the

---

[16] *See, e.g., Walgreens v. McKenzie*, 713 S.W.3d 394, 399 (Tex. 2025); *Massage Heights Franchising, LLC v. Hagman*, 712 S.W.3d 615, 623 (Tex. 2025); *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010).

[17] *See Werner Enters. v. Blake*, 719 S.W.3d 525, 540 (Tex. 2025).

[18] *Endeavor Energy*, 593 S.W.3d at 311 (quoting *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012)).

7

shipment did not present an unusual risk or hazard and (2) Home Depot neither controlled the actors nor created the risk that materialized.

Home Depot's only connection to the fatal accident is as a passive shipper of unremarkable goods being transported by a federally regulated motor carrier. The pleadings do not allege that Werner lacked authority to operate on public roads or—more critically—that it derived any such authority from Home Depot. To the contrary, Werner was operating under its own authority, subject to federal oversight. Likewise, the pleadings fail to identify any conduct by Home Depot that created or controlled the risk that Werner's employee would violate a traffic law. The general risk of that happening was certainly foreseeable, but Home Depot's transportation agreement with Werner did not make it any more so.[19]

"When determining whether a negligence duty is owed, the foreseeability of the risk is 'the foremost and dominant consideration.'"[20] The facts pleaded here show that any risk to the motoring public existed independently of Home Depot's shipment and arose only from Werner's conduct as a motor carrier. That matters. If Werner's authority to operate as a motor carrier did not come from Home Depot, then Home

---

[19] *See Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 149-50 (Tex. 2022) (explaining that an essential part of the duty inquiry is foreseeability of the specific danger that the defendant's conduct poses to the particular plaintiff or one similarly situated and finding no duty existed where the risk of danger was unchanged by the defendant's alleged conduct).

[20] *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 639 (Tex. 2023) (quoting *Phillips*, 801 S.W.2d at 525); *see SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995) ("Foreseeability alone, however, is not *sufficient* to create a new duty." (emphasis added)).

Depot cannot be said to have "put" Werner's trucks on the road in any legally meaningful sense. Those trucks would be on the road regardless—carrying Home Depot's goods, other cargo, or nothing at all—and neither the shipment nor the identity of the customer altered the risk posed to other motorists.[21] In this way, Home Depot's role was purely incidental to the roadway risks created by Werner's independent operations. Accordingly, Home Depot's engagement of an FMCSA-regulated carrier to transport nonhazardous freight did not give rise to a common-law duty of care to the decedent.

That allocation of responsibility is consistent with the regulatory framework applicable to interstate motor carriers. Under FMCSA regulations, motor carriers are subject to federal requirements governing operating authority, insurance, driver-qualification standards, hours-of-service rules, and safety compliance.[22] Those obligations are imposed directly on a carrier that holds itself out as providing transportation in interstate commerce.[23] The plaintiffs' pleadings say nothing about Werner's licensure status. The omission of that easily verifiable fact is conspicuous but ultimately irrelevant. Silence does not support an inference that Werner was operating

---

[21] *Cf. Elephant Ins.*, 644 S.W.3d at 150 (observing that the danger of getting hit while standing on the side of the road was "no more or less foreseeable because photographs [were] being taken"—the risk arose from where the victim was, not what the victim was doing).

[22] *See supra* note 6.

[23] *See, e.g.*, 49 U.S.C. § 13901 (requiring registration of motor carriers); 49 C.F.R. §§ 390.3(e), 391.11 (imposing duties on motor carriers regarding driver qualifications and safety compliance).

unlawfully,[24] and Rule 91a does not permit courts to infer misconduct absent supporting factual allegations.[25] In any event, the pleadings themselves confirm that Werner's safety fitness is regulated and monitored at the federal level. Where, as here, the cargo poses no inherent risk, private parties should not be required to duplicate that comprehensive federal safety regime or qualitatively evaluate and rank the safety fitness of more than a million regulated carriers before engaging in routine commerce. Such a duty would be neither practical nor workable.[26] Instead, a shipper of such cargo should ordinarily be entitled to rely on the carrier to conduct business lawfully and to utilize proper equipment.[27]

Of course, a shipper may incur liability for its own negligence even if the motor carrier is subject to nondelegable statutory or

---

[24] *Cf., e.g., Pagayon*, 536 S.W.3d at 504 (holding that the existence of a duty is determined from the facts of the occurrence as alleged); *Prudential Ins. Co. of Am. v. Uribe*, 595 S.W.2d 554, 562-63 (Tex. 1979) (explaining that wrongful conduct is not presumed and evidence of one type of wrongful conduct does not create a presumption of engagement in other wrongful conduct).

[25] *See* TEX. R. CIV. P. 91a.1 ("A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.").

[26] *See Otis Eng'g*, 668 S.W.2d at 309 (explaining that the existence of a duty is informed by "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the [defendant]").

[27] We express no opinion as to any common law duties arising from the shipment of cargo that presents an unusual hazard or risk to other highway users. *See MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 495-99 (Tex. 2010) (holding that federal minimum safety standards defined a floor without preempting state common law rules).

10

regulatory duties.[28] But to the extent the plaintiffs read *United Rentals North America, Inc. v. Evans*[29] as supporting a shipper's general duty of care to the motoring public, their reliance on that case is misplaced. *United Rentals* did not involve a passive shipper of ordinary goods. Rather, the shipper's own conduct—loading oversized equipment onto an incompatible trailer—created a risk of harm to motorists on public roads. Transportation of oversized loads requires a specialized trailer and a special permit, but no permit was secured.[30] Then, due to a mix-up about which motor carrier was engaged to transport that equipment, the shipper's employees erroneously loaded the freight onto a regular trailer.[31] The shipper discovered its employees' error but failed to notify the motor carrier.[32] While in transport, the equipment struck a low-clearance overpass, and a motorist was crushed by the falling debris.[33] We held that the shipper bore a duty to highway motorists that could support liability because, "in general, a party who takes affirmative acts that create a danger on a public highway can be held responsible for the results of those actions, along with other responsible

---

[28] *See United Rentals*, 668 S.W.3d at 639-40 ("[T]he mere existence of a statutory duty enforceable against the trucking company [does not] automatically eviscerate[] all other parties' common law duties that might have arisen depending on the facts.").

[29] *Id.*

[30] *Id.* at 632.

[31] *Id.* at 632-33.

[32] *Id.* at 633.

[33] *Id.*

actors."[34] Nothing of the sort is alleged here, so that principle does not apply.

Home Depot's goods were but a passenger: onboard but uninvolved in the accident. "[I]t may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to . . . prevent injury to others."[35] It follows then that a customer with ordinary cargo does not undertake a duty to prevent the independent motor carrier's torts simply by engaging it to transport that freight. Because that is all that happened here, the trial court must vacate its order denying the Rule 91a motion and dismiss the claims against Home Depot.[36] A writ of mandamus will issue only if it fails to do so.

John P. Devine
Justice

**OPINION DELIVERED:** May 15, 2026

---

[34] *Id.* at 639 (internal quotation marks omitted).

[35] *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) (quoting *SmithKline*, 903 S.W.2d at 353).

[36] *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) ("Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss."); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding) (noting that discretionary relief may be appropriate when necessary to "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings").